## CHARLES MASON
### v.
## SOLOMON ELY.

1. WILLS—*rules of construction.* In construing wills, like other instru·
ments, the meaning of the party executing them, must, if practicable, be
ascertained and enforced. And in doing so, resort may be had to every
provision of the instrument to ascertain that intention; nor, if it may be
avoided, will any portion of the instrument be left inoperative.

2. And such instruments must be interpreted by the language employed
by the testator, without resorting to extrinsic evidence.

3. SAME—*construction of the will in this case—description of premises.* The
property devised in this case was described as follows: "So much of lots
numbered one and two in block number fifteen, in the southern addition of
Miller and others to Bloomington, as is now inclosed by fence, including the
house where the widow Crawford now lives." Lot two lies west, and
adjoining lot one; both lots were inclosed by an exterior fence, and they
were divided by fences running north and south through the middle of each,
making three inclosures; the house in which the widow Crawford lived was
in the west inclosure, being on·the west half of lot two; the dwelling of the
testator was in the east inclosure, being on the east part of lot one. *Held*,
that the west half of lot two, alone, passed by the devise. The reference to
lots "one and two" was merely descriptive of an entire property, only a
part of which, the inclosure embracing the widow Crawford's house, was
intended to be devised.

WRIT OF ERROR to the Circuit Court of McLean County.

This was an action of ejectment instituted in the court below
by Charles Mason against Solomon Ely, to recover lot number
one and the east half of lot number two, in block number
fifteen, in the southern addition of Miller and others to the city
of Bloomington, in McLean County.

The plaintiff claimed title as devisee of George Mason,
deceased, under the following clause in his will: "Second, to
Charles Mason I give and bequeath the following property,
to-wit: So much of lots numbered one and two, in block
number fifteen, in the southern addition of Miller and others to

Bloomington, as is now inclosed by fence, including the house where the widow Crawford now lives." It appears from the testimony, that lot two lies west and adjoining lot one; both were inclosed by an exterior fence, and were divided into separate inclosures by fences running north and south through the middle of each. The house where the widow Crawford lived was in the west inclosure, being upon the west half of lot two; the dwelling of the testator was in the east inclosure, being on the east part of lot one.

Upon the trial the defendant proposed to prove the declarations of the testator made at the time he wrote the will, as to what he intended to give to the plaintiff, which the court refused, and exception was taken.

The issue was found for the defendant; a new trial refused, and judgment entered upon the finding. The plaintiff thereupon sued out this writ of error. The question presented is, what passed by the will—the whole of lots one and two, or only that portion of lot two embraced in the west inclosure, in which was situate the house where the widow Crawford lived.

Messrs. TIPTON and BENJAMIN, for the plaintiff in error.

Mr. W. H. HANNA, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This whole controversy turns upon the true construction of a portion of the last will and testament of George Mason, deceased. The clause in dispute is this: "Second, to Charles Mason, I give and bequeath the following property, to-wit: So much of lots numbered one and two, (1 and 2) in block number fifteen, (15) in the southern addition of Miller and others, to Bloomington, as is now inclosed by fence, including the house where the widow Crawford now lives."

These lots were inclosed, as will be seen by the annexed diagram,* by an exterior fence. There were also, two interior fences running north and south, so as to form three distinct inclosures. One of these latter fences divided lot one near the center, and the other, lot two, in the same manner. The house occupied by the widow Crawford was on the north-west corner of lot two, and was inclosed in the separate division formed by a portion of the north and south exterior fences, and all of the outside western fence, and the interior fence dividing lot two. The dwelling house of testator, together

C—Widow Crawford's Dwelling.   B—Barn.   W—Wood-house.   M—George Mason's Dwelling.   S—Smoke-house.   --------------Fence.

with other buildings, was on the north-eastern portion of lot one.

It is contended by one party that under the language of the devise, the devisee takes all of lot two and so much of lot one as lies west of the fence dividing the latter named lot. By the other party it is contended, that it is limited to that portion of lot two embraced in the inclosure formed by the fence dividing that lot, and being on the west side of the same.

In construing wills, like other instruments the meaning of the party executing them must, if practicable, be ascertained and enforced. And in doing so resort may be had to every provision of the instrument to ascertain that intention. Nor will, if it may be avoided, any portion of the instrument be left inoperative. And such instruments must be interpreted by the language employed by the testator, without resorting to extrinsic evidence.

In this case the difficulty arises from the fact that the devisor refers to both lots, when there is no one of these three inclossures which seems to answer all of the calls in the description. If we take the western inclosure, it does not embrace any portion of lot one. If we take the middle lot, it embraces a portion of both lots, but the widow Crawford's house is not inclosed in this lot. If the eastern inclosure, then it does not embrace any portion of lot two. If the exterior fence is taken then it would include the widow Crawford's house, but it would embrace the whole and not a part of these lots.

It is not contended, nor can it reasonably be, that this devise carries the whole of these two lots. And the same may be said of the eastern inclosure which is wholly on lot one. Then to which of the other two does it apply, or does it embrace both as contended? The western inclosure would fully answer the description in every particular, if the testator had not referred to lot one in the devise, as there is no dispute that it is a part of block fifteen, in the addition to the city referred to, and it is within the block named, and is on lot two, specified, and it includes the house in which the widow Crawford resided.

This inclosure answers more of the calls in the description than either of the others claimed to embrace the devised premises. The fence around the middle inclosure does not embrace the house occupied by the widow Crawford, and we think was not intended, nor do either of the parties so insist.

When we remember that the two lots were inclosed by an exterior fence, and the residence of the testator was within that inclosure, the lots were no doubt for many purposes one property, and might be described as lots one and two, to designate it as a single piece of ground. The property as a single estate might be known by that description as well as the residence of testator. Had he referred to it as so much of the property upon which he resided, as was inclosed by the fence, including the house in which the widow Crawford resided, a controversy would not likely have arisen. Whilst his house was on lot one, and the other house was on lot two, inasmuch as both lots were inclosed by an exterior fence common to both, still all persons would have understood it as referring to both lots as constituting but one property, and that the western of the three inclosures had passed by the devise. And we think when he referred to the property as lots one and two, it was intended as a general description of an entire property, a portion of which he was devising to his son.

By this construction no portion of the language employed need be rejected to give effect to the devise. Any other construction would require the rejection of some portion of the language employed. If the construction were given that it embraced the western and central inclosures, then the eastern fence, inclosing the house described, would have to be rejected, and another adopted which does not in any sense contribute to its inclosure. The fence dividing lot two would have to be removed before a fence would be found inclosing the house and a portion of both lots. And to give the construction contended for by plaintiffs in error, this would have to be done. But if the entire property was designated as lots one and two,

and designed to describe the property as one, and not as separate premises, all difficulty disappears.   And the balance of the description is natural and simple, thus giving effect to the devise without adding to or subtracting from the language employed, and giving full force and effect to every part of the description.

That such was the sense in which the reference was made to the property by the numbers we have no doubt.   That it had been long occupied, inclosed and treated as one, and not as several estates we may readily suppose.   And if so, it was natural to so refer to it in the general description.   As then, by the words of the will, testator did not give lot one to plaintiff in error, but only so much of it as was then enclosed by a fence, which included the widow Crawford's house,—now no part of lot one was in that inclosure, consequently no part of lot one passed by the will to plaintiff in error.

We are, therefore, of the opinion that the judgment of the court below is correct, and must be affirmed.

*Judgment affirmed.*